IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) |
|---|---|
| | ) |
| v. | ) 2:15-cr-00088 |
| | ) **ELECTRONICALLY FILED** |
| MICHAEL DAVID WOODSON, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Defendant Michael David Woodson is charged with making a false statement in the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6), sale of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1), and making a false statement to the government in violation of 18 U.S.C. § 1001(a)(2). Woodson filed a Motion to Suppress Testimonial Evidence, ECF No. 56, in which he moved to suppress oral statements he made to two Pittsburgh Police officers, Detective Joseph L. Bielevicz and Officer Brett Novak (collectively, the "Officers"), on May 20, 2014—statements Woodson anticipates the United States will offer as evidence against him at trial. Woodson also filed a Motion to Suppress Physical Evidence, ECF No. 57, a Motion for a Pretrial Hearing on the Admissibility of Co-Conspirators' Statements, ECF No. 49, and a Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses, ECF No. 42. The Court held a suppression hearing on October 14, 2016.

Woodson's Motions will be denied.

### I.     BACKGROUND

At the suppression hearing, the Court heard testimony from Detective Bielevicz, Officer Novak, and Defendant Woodson. Notwithstanding the attacks each side launched on the

credibility of the other side's witnesses, what we know from the uncontradicted, material testimony follows.

During the course of their investigation into Woodson and certain firearms, the Officers called Woodson's grandmother looking for him, and, since he was not at home, they left their phone number. Woodson called back and voluntarily agreed to meet with the Officers, believing the purpose of the meeting was for the Officers to return certain of Woodson's firearms to him. The Officers let Woodson choose the location of the meeting. The location Woodson chose was an open, public area with which he was well familiar: a park bench on a sidewalk on a public street outside of the Rankin, PA police station, just a few hundred yards from the apartment where his girlfriend lived with their new baby.

During the meeting, Detective Bielevicz and Woodson sat on the park bench, while Officer Novak stood near the car. The Officers inquired about a pistol registered in Woodson's name. Woodson responded that he kept the pistol at the apartment. The Officers asked Woodson to show them the pistol, and Woodson agreed to take the Officers to the apartment to show it to them. The Officers were not familiar with the neighborhood, so Woodson led them to the apartment on foot. He then invited them inside. Once there, the questioning continued, and Woodson honored the Officers' request to show them the pistol. The questioning ended when Woodson, in his words, decided to "shut down" and "stop[] talking." ECF No. 84 at 84-5.

## II. DISCUSSION

### A. Woodson's Motion to Suppress Testimonial Statements

The heart of Woodson's argument is that he gave statements during the course of a custodial interrogation, that the Officers gave him no *Miranda* warnings, and/or that the statements were otherwise involuntary. *Miranda* warnings are required when an individual is subject to a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 477-79, 86 S. Ct. 1602,

2

16 L. Ed. 2d 694 (1966). In other words, a defendant's *Miranda* rights attach to statements made while "in custody" and under "interrogation." *Illinois v. Perkins,* 496 U.S. 292, 297, 110 S. Ct. 2394, 2397, 110 L. Ed. 2d 243 (1990). "A person is in custody when he either is arrested formally or his freedom of movement is restricted to 'the degree associated with a formal arrest.'" *United States v. Willaman,* 437 F.3d 354, 359 (3d Cir. 2006). "Not all restraints on freedom of movement amount to custody for purposes of *Miranda.*" *Howes v. Fields,* —— U.S. ——, 132 S. Ct. 1181, 1189, 182 L. Ed. 2d 17 (2012). A court must ask "the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda.*" *Id.* at 1190.

At a suppression hearing, the court, as the finder of fact, determines the credibility of witnesses and may accept or reject any or all of a witness' testimony. *United States v. Howard,* 787 F. Supp. 2d 330, 331-32 (D.N.J. 2011). The court judges credibility by considering a number of factors, including the witness' demeanor and manner on the stand, his ability to accurately recollect the matters at hand, the manner in which he may be affected by the outcome, the extent to which his testimony is either supported or contradicted by other evidence and testimony in the case, and whether his testimony withstands the "common sense test of reason and logic." *Id.*; *see also United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005). A witness should not be found more or less credible simply because he is a law enforcement officer. 787 F. Supp. 2d at 332.

In this case, after a review of the record, including all of counsels' filings, and after hearing testimony from Detective Bielevicz, Officer Novak, and Woodson, the Court concludes that none of Woodson's interactions with the Officers on May 20, 2014 constituted custodial interrogations that trigger Woodson's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At no time was Woodson placed under arrest or physically restrained in any way, and at no time was Woodson threatened by the Officers in any way. Although Woodson testified that, based on his life experience, one could not refuse to talk with the police, he also testified that he did just that: he voluntarily "shut down" the conversation with no repercussions by telling the Officers "I don't know" and "I'll see about it." ECF No. 84 at 84-5. When asked what he meant by "shut down," Woodson explained that he "stopped talking." ECF No. 84 at 84-5. Moreover, the Officers' questioning of Woodson occurred in two places that Woodson himself selected: a public, open-air setting on a park bench outside of a police station; and the apartment a few hundred yards away where Woodson led the Officers after agreeing to show them his pistol.

In sum, there is nothing in the record from which the Court could properly conclude that the Officers placed Woodson in custody physically or psychologically. There is nothing in the record from which the Court could conclude that Woodson's will was overcome by the Officers' questioning or any environmental factor surrounding that questioning, whether viewed through the lens of this Defendant or through the lens of any reasonable defendant. Simply put, under either a subjective or an objective test, Woodson was not in custody at all on the day in question, nor is there any basis in the record to conclude that Woodson's statements to the Officers were involuntary—particularly when the record shows that Woodson was aware he could stop answering the Officers' questions. ECF No. 84 at 84-5.

A couple of final points. The United States began an attack on Woodson's credibility by pointing out a seemingly irreconcilable inconsistency in explanations he has allegedly provided as to how a Smith and Wesson .40 caliber pistol he purchased later came to be found in the possession of Mr. Kevin Wygant, a convicted felon. In a hearing before another Judge of this Court, Woodson stated under oath that Mr. Wygant took the gun from him. ECF No. 43 at 20-21. Detective Bielevicz, however, claimed that Woodson told him a very different story on May 20,

4

2014: namely, that in a confluence of coincidences, Woodson happened to have taken that gun with him when he went to visit a friend from McKeesport, Pennsylvania. ECF No. 84 at 17-18. Woodson realized that his friend did not allow guns in her apartment, so he stashed the gun in a bush outside of her apartment. *Id.* That, according to Woodson (as related by Detctive Bielevicz), was the beginning of certain fortuitous unfortuities in his life. In front of the very bush where Woodson hid the gun, Wygant—who, in another stroke of serendipity, was the very same man who apparently gave Woodson a ride to the gun store to buy the gun Woodson stashed in the bush moments before, ECF No. 43 at 20-21—was tackled by a different group of police officers. ECF No. 84 at 17-18. Then, according to Woodson, Wygant was tackled just so, and the gun flew from the bush and was then and there attributed by the other police officers to Wygant. *Id.* Woodson has not offered an explanation for the divergence in the story he previously gave under oath and the story he allegedly told Detective Bielevicz, nor has he offered any additional detail as to the string of coincidences that put Mr. Wygant and the "bush gun" together outside of his friend's apartment.

On the flip side of the question-of-credibility coin, Woodson made hay of the suppression hearing testimony of Detective Bielevicz, who responded in the negative to a very precisely worded question from Woodson's lawyer. The exchange went like this:

> Q. So it would be your testimony that upon leaving that day, neither you nor Mr. Novak had taken anything with you that you didn't have when you walked into the apartment; is that right?
>
> A. I don't remember taking anything with us.

ECF No. 84 at 39.

As it turns out, however, Bielevicz went on to testify that he and Officer Novak confiscated—seemingly without Woodson's consent—Woodson's apparently lawfully issued

5

and possessed Allegheny County "concealed carry" permit for the pistol Woodson willingly showed them at the apartment. Later, in a rehabilitative effort, Detective Bielevicz clarified that he took the precisely worded question from Woodson's lawyer, which seemed to focus on the word "anything," to actually be limited to any "weapons" or "evidence of a crime."

The resolution of the facial inconsistencies surrounding the "how did Mr. Wygant get the bush gun" question is a merits issue that a jury may have to untangle at trial. The failure of Detective Bielevicz to admit that he left the apartment with the Woodson's "concealed carry" permit, and his nuanced parsing of defense counsel's precisely and clearly worded question, was puzzling, because those things appear to have nothing to do with the merits of the underlying criminal case, nor with the issues before the Court on the suppression motion.[1]

Regardless of the impact that Woodson's and/or Detective Bielevicz's facially inconsistent statements might have on the weight of their testimony more generally, they do not, from the Court's perspective, move the credibility needle as to the issues before the Court on this suppression motion. The core set of operative facts of what took place on May 20, 2014, as set out above, is uncontested. The testimony at the suppression hearing, when considered as a whole, even in light of the aforementioned credibility speed bumps, leaves the Court with the clear and firm conviction that there was no custodial interrogation of Woodson on May 20, 2014, and Woodson's statements were voluntarily given, and the Court so concludes.

Woodson's Motion to Suppress Testimonial Evidence will therefore be denied.

**B.    Woodson's Other Motions**

Woodson's Motion to Suppress Physical Evidence, ECF No. 57, and Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses,

---

[1] Detective Bielevicz also gave what the Court finds to be an odd justification for confiscating the permit, given that local police are not charged by state statute with policing the County's "concealed carry" permit process. Considering that the permit appears to be a legal document of some real consequence, it is almost certainly a "paper" as that term is used in the Fourth Amendment.

ECF No. 42, will be denied without prejudice. The United States argued that Woodson lacks standing to challenge the physical evidence in question in that Motion, a Rossi .357 revolver, because it was recovered during a lawfully executed search of another person's residence. The United States also said that it will disclose all known information bearing on witnesses' truthfulness, bias, or motivation to testify not later than seven days prior to trial, as it is under no legal obligation to disclose such information sooner. Mr. Woodson's lawyer stated at the suppression hearing that he would no longer press either of these Motions and conceded that the United States' position in opposition to each of them was correct under prevailing law. ECF No. 84 at 9, 103. The Court will treat them as withdrawn without prejudice, and they therefore will be denied without prejudice.

Mr. Woodson's Motion for a Pretrial Hearing on the Admissibility of Co-Conspirators' Statements, ECF No. 49, will be denied. In it, Woodson contends that the Court needs to hold a pretrial hearing to determine the existence of a conspiracy and, thus, the admissibility of any co-conspirators' statements under Federal Rule of Evidence 801(d)(2)(E). To the contrary, "[e]vidence of extra-judicial statements made by alleged co-conspirators may be admitted upon the court's finding that there is a sufficient showing of a common enterprise by means of evidence independent of the proffered declaration," and, for the purposes of making that finding, the Court may "admit the hearsay evidence subject to later connection." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 820 (3d Cir. 1982) (citing *United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 457 (3d Cir. 1979); *U.S. v. Trowery*, 542 F.3d 623, 626-27 (3d Cir. 1976)).

Here, the United States avers it may not even offer statements of alleged co-conspirators into evidence, and, to the extent it later seeks to offer such statements at trial, "the control of the order of proof at trial is a matter committed to the discretion of the trial judge." *Cont'l Grp.*, 603

7

F.2d at 456. The Motion for a Pretrial Hearing on the Admissibility of Co-Conspirators' Statements will therefore be denied without prejudice.

### III. **CONCLUSION**

For the above reasons, Woodson's Motion to Suppress Testimonial Evidence, ECF No. 56, and Motion for a Pretrial Hearing on the Admissibility of Co-Conspirators' Statements, ECF No. 49, will be denied. Woodson's Motion to Suppress Physical Evidence, ECF No. 57, and Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses, ECF No. 42, will be treated as withdrawn without prejudice based upon the representations of Woodson's lawyer at the suppression hearing, and they therefore will be denied without prejudice.

Mark R. Hornak
United States District Judge

Date: January 4, 2017

cc: All counsel of record